# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CR-10-0279-HE (01) |
| | ) | |
| ADRIAN LAMONT MARZETTE, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Defendant Adrian Lamont Marzette is charged in a one count indictment with possession of a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g)(1). He filed a motion seeking the suppression of evidence seized during a warrantless search of his vehicle. An evidentiary hearing was held on Tuesday, November 30, 2010, at which the arresting officers testified. Having considered both the testimony of the government's witnesses[1] and the briefs filed by the respective parties, the court finds the following facts.

On May 23, 2010, at approximately 8:40 p.m., Oklahoma City Police Officer James Doyle signaled for defendant to pull his vehicle over on Northeast 23rd Street at the I-35 bridge in Oklahoma County, after he saw the vehicle had a severely cracked windshield and suspected the defendant was not wearing a seatbelt.[2] Defendant stopped a few blocks later. Officer Wesley Morrison, who was there to assist Officer Doyle, arrived at or around the

---

[1]*Defendant did not call any witnesses.*

[2]*Oklahoma law makes it a traffic violation to operate a vehicle with a severely cracked windshield, 47 Okla. Stat. § 12-404(B)(2), and to operate a vehicle without wearing a seatbelt, 47 Okla. Stat. § 12-417(A).*

time Officer Doyle was approaching defendant's car. Officer Doyle asked defendant for his driver's license and proof of insurance at which time defendant loudly asked why he was being pulled over. Officer Doyle replied that he noticed defendant's car had a cracked windshield and was not wearing a seatbelt.[3] Noticing defendant appeared agitated, he then requested the defendant to step out of the vehicle, patted him down, and directed defendant to go back to his squad car. Defendant complied.

Officer Doyle again asked defendant for his driver's license and proof of insurance. Defendant stated that they were in his glove compartment but expressly denied the officers permission to obtain the items. At that point—approximately ten minutes into the traffic stop—Officer Doyle called for a K-9 unit. Officer Doyle continued his efforts to obtain and verify defendant's information. Approximately seven minutes later, while Officer Doyle was writing up defendant's citation for a cracked windshield, a K-9 officer and his dog arrived and walked around defendant's car. The dog alerted to a portion of the car. Sgt. Morrison searched the car and found two .380 caliber pistols and fourteen rounds of .380 caliber ammunition inside a baby diaper bag located in the trunk of defendant's vehicle.

"A traffic stop is a seizure under the Fourth Amendment." U.S. v. Taverna, 348 F.3d 873, 877 (10th Cir. 2003) (citing Delaware v. Prouse, 440 U.S. 648, 653 (1979)). However, such a stop is reasonable if "the officer's actions [were] justified at its inception, and . . . it was reasonably related in scope to the circumstances that justified the interference in the first

---

[3]Defendant argues that he was wearing a lap belt. [Doc. #17, ¶ 4]. Given the violation for a cracked windshield, whether or not defendant was wearing a seatbelt is of no moment.

place." U.S. v. Tibbetts, 396, F.3d 1132, 1136 (10th Cir. 2005).

The government argues (and the plaintiff eventually conceded at the hearing) that the cracked windshield justified the initial stop. "A traffic stop is justified at its inception if it is based on an observed traffic violation." Taverna, 348 F.3d at 877. Under Oklahoma law, a driver commits a traffic violation when he drives a vehicle with a severely cracked windshield. 47 Okla. Stat. § 12-404(B)(2). The stop was therefore valid at its inception.

The main thrust of defendant's argument—that Officer Doyle's traffic stop exceeded its permissible duration and scope—is unpersuasive. "An officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation." Taverna, 348 F.3d at 877 (quoting U.S. v. Caro, 248 F.3d 1240, 1244 (10th Cir. 2001)). Once a citation is issued and the driver's license is determined to be valid, the officer generally must allow the driver "to proceed on his way, without being subject to further delay . . . ." U.S. v. Anderson, 114 F.3d 1059, 1064 (10th Cir. 1997). Here, the total duration of time from the initial traffic stop to the dog sniff was approximately seventeen minutes, at which point Officer Doyle was still writing up the citation.[4] Part of the time lapse was attributable to a check for outstanding warrants, due to the officer's concern with defendant's agitated reaction to the stop and the slowness with which he responded to the officer's efforts to pull him over. Because the elapsed time was not unreasonable under the circumstances

---

[4]*At the hearing, defendant suggested the officers needed suspicion of drug activity to justify requesting a drug dog. However, because a dog sniff is not a "search" under the Fourth Amendment, "individualized reasonable suspicion of drug-related criminal activity is not required when the dog sniff is employed during a lawful seizure of the vehicle." U.S. v. Morales-Zamora, 914 F.2d 200, 203 (10th Cir. 1990).*

and the officer was still performing routine tasks at the time the dog alerted, the scope of defendant's detention was reasonable. *See* U.S. v. Tkachenko, No. 04-40105, 2005 WL 2133713, at *4 (D. Kan. Sept. 1, 2005) (finding that sixteen minutes between the initial stop and drug dog alert was reasonable for officer to complete ordinary tasks).[5]

Accordingly, the court concludes defendant's vehicle was properly stopped and the evidence in question validly seized. The motion to suppress [Doc. #17] is **DENIED.**

**IT IS SO ORDERED**.

Dated this 2nd day of December, 2010.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[5]*Here, defendant's own conduct—his refusal to cooperate in the production of his license and proof of insurance—impacted the amount of time reasonably necessary to accomplish the purposes of the stop. "When a defendant's own conduct contributes to a delay, he or she may not complain that the resulting delay is unreasonable."* U.S. v. Shareef, *100 F.3d 1491, 1501 (10th Cir. 1996) (citing* U.S. v. Sharpe, *470 U.S. 675, 699-700 (1985)).*